UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| SHIRLEY HEMMINGER, | ) |
|---|---|
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:15-CV-159-JEM |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on April 23, 2015, and on Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed by Plaintiff on October 19, 2015. The Commissioner filed a response to Plaintiff's brief on February 1, 2016, and on February 11, 2016, Plaintiff filed a reply.

**I.    Procedural Background**

In August 2013, Plaintiff applied for disability insurance benefits with the United States Social Security Administration ("SSA"), alleging that he had become disabled as of October 1, 2009. Plaintiff's claim was denied initially and on reconsideration. On November 6, 2014, Administrative Law Judge ("ALJ") Romona Scales held a hearing at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. On January 20, 2015, the ALJ issued a decision denying Plaintiff benefits on the ground that Plaintiff was not disabled.

In the opinion, the ALJ made the following findings under the required five-step analysis:

1. The claimant did not engaged in substantial gainful activity from August 9, 2013, the application date, to the date of the hearing .

2. The claimant had the following severe impairments: degenerative joint disease/arthritis of the bilateral knees, status post bilateral knee surgery, a gallbladder disorder, and obesity.

3. The claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4. The claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except that the claimant could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and she could occasionally balance, stoop, kneel, crouch, and crawl.

5. The claimant was capable of performing past relevant work as a dealer because it did not require performing work-related activities precluded by the claimant's RFC.

6. The claimant was not under a disability, as defined in the Social Security Act, since August 9, 2013, the date the application was filed.

On March 2, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. On April 23, 2015, Plaintiff filed the underlying Complaint seeking reversal of the adverse SSA determination.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Facts

On January 30, 2011, Plaintiff slipped and fell on a patch of ice, injuring her left knee. On November 21, 2012, Plaintiff reported pain in both knees, the right knee having been injured by another fall earlier that year. Plaintiff was treated for this knee pain, and that treatment included injections, aspirations, surgeries, physical therapy, and pain medications.

In September 2011 and April 2013, Plaintiff was also diagnosed with lumbar and thoracic spine

issues, including fractures and contusions. On April 13, 2012, Plaintiff visited an emergency room for injuries to her left ankle and right knee after yet another fall. From April 12 through April 14, 2013, Plaintiff was admitted to the hospital for injuries to her right wrist and her back, sustained after falling from a ladder. Plaintiff has also been diagnosed with obesity, chronic cholecystitis, acid reflux disease, mental health issues, and a hiatal hernia.

On November 21, 2013, Dr. Brett Brechner, Plaintiff's primary care physician, examined Plaintiff based on her reports of bilateral knee pain and numbness. Dr. Brechner observed that Plaintiff had limited range of motion and tenderness in her knees. Dr. Brechner prescribed pain medication to increase Plaintiff's ability to perform daily activities. On November 3, 2014, Dr. Brechner opined that Plaintiff could walk up to one block without rest or severe pain, sit up to thirty minutes at a time, and stand with a cane ten minutes at a time. He also opined that Plaintiff could sit only two hours a day in an eight-hour workday, and that she could stand and walk only two hours in an eight-hour workday. Dr. Brechner further opined that Plaintiff would be limited to lifting and carrying lest than ten pounds, and that she could not twist, bend, squat, climb stairs, or climb ladders. Dr. Brechner estimated that Plaintiff would miss more than four days of work per month due to her limitations.

Dr. Sherwin Ho, an orthopedic surgeon, treated Plaintiff for knee pain multiple times from January through August 2012. Dr. Ho noted that Plaintiff had limited range of motion, swelling, and tenderness in both knees, and grinding in her right knee. Dr. Ho diagnosed Plaintiff with arthritis in both knees and treated Plaintiff with steroid injections. On March 24, 2014, and November 3, 2014, Dr. Ho opined that Plaintiff could not walk without a cane and that she could not walk more than one block at a reasonable pace, could not walk on rough or uneven surfaces, could not use public transportation or carry out simple daily activities, and could not climb several stairs using

3

only one hand rail. Dr. Ho also opined that Plaintiff was not able to kneel, squat, climb, sit, or stand for prolonged periods and had to change positions frequently.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the SSA and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions."

4

*Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Does the impairment meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**IV.    Analysis**

A. <u>Medical Opinions</u>

Plaintiff contends that the ALJ's decision to give greater weight to non-examining state agency medical consultants opinions over the opinion of Plaintiff's treating physicians was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ should have given more weight to the conclusions of Dr. Sherwin Ho and Dr. Brett Brechner, each of whom opined that Plaintiff had arthritis in both knees, which lead to significant physical limitations. The Commissioner argues that the ALJ did not err in considering the relevant medical opinions because she had good reasons to discredit the treating physicians' opinions, namely that Dr. Ho had not seen Plaintiff for some time before giving his opinion and because there was medical evidence contradicting both doctors' opinions. The Commissioner also argues that the ALJ gave the appropriate weight to the state agency medical consultants' opinions because they were consistent with Plaintiff's treatment history and Plaintiff's own statements about her limitations.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that the opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." S.S.R. 96–2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt*, 395 F.3d at 744. In particular, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in

7

the case record to determine the extent to which the opinion is supported by the record." S.S.R. 96–5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting S.S.R. 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

If an ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also* 20 C.F.R. § 404.1527(a)(2)(c)(2)(ii)(5) (an ALJ is required to grant more weight to a treating specialists when the medical issue is related to their area of expertise ); *see also* 20 C.F.R. § 404.1527(c)(2)(ii)(5) (an ALJ is required to consider the length, nature, and extent of a treating providers relationship with the plaintiff and the frequency of his examinations). "[W]henever an ALJ . . . reject[s] a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ stated that she "did not give [Dr. Ho and Dr. Brechner's] statements significant

8

weight" because Dr. Ho did not see the claimant in 2014 and because both opinions were "undermined by other substantial evidence in the record." The ALJ pointed out that other consulting doctors who had treated Plaintiff in October 2012 and October 2013 had observed that Plaintiff could walk with a normal gait and without assistive devices. Instead of giving controlling weight to Plaintiff's treating physicians, the ALJ gave greater weight to the opinions of non-examining State agency physicians, Dr. M. Ruiz and Dr. J.V. Corcoran. D. Ruiz and Dr. Corcoran opined that Plaintiff could perform light work, including lifting and carrying twenty pounds occasionally and ten pounds frequently, sitting, standing, and walking about six hours in an eight hour workday with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

The ALJ discounted the opinions of Dr. Ho and Dr. Brechner, stating that they were inconsistent with the October 2012 opinion of Dr. Kanayo Odeluga and the October 2013 opinion of Dr. M. Siddiqui, each of whom had also treated Plaintiff. The ALJ pointed out that Dr. Kanayo had noted that "the claimant had a normal gait and an otherwise normal physical examination, with no evidence of any significant deficits in motor or neurological functioning, contrary to the opinions of both Dr. Ho and Dr. Brechner." AR 23. The ALJ also stated that Dr. Siddiqui "noted that the claimant's gait was normal, that she ambulated without support of any assistive device, that she had normal motor strength throughout, normal manipulative functioning, and normal sensory functioning." AR 23.

However, these opinions are not inconsistent with Dr. Ho's opinion that "the claimant was unable to kneel, squat, or climb, and that the claimant was unable to sit or stand for long periods of time, among other things." AR 22. They also are not inconsistent with Dr. Brechner's opinion that

> [C]laimant was limited to walking "less than" 1 block, sitting, standing and walking for less than 2 hours a day, that she required 3

9

> unscheduled breaks each day for 15-20 minutes each, that the claimant needed to elevate her legs 16-20 inches 70% of the workday, that she could "rarely" lift less than 10 pounds, that the claimant could only use her hands, fingers and bilateral arms for "20%" of the workday, that the claimant would be off task 25% or more of the workday, and that the claimant would likely be absent from work more than 4 days a month.

AR 22-3. Dr. Kanayo and Dr. Siddiqui's opinions merely revealed that Plaintiff had the ability to walk and move. The ALJ did not point to any observation from Dr. Kanayo or Dr. Siddiqui – or any other evidence – that refuted Dr. Ho and Dr. Brechner's findings as to Plaintiff's ability to conduct such activities for sustained periods in a work environment. Their opinions also did not address many of the other findings Dr. Ho and Dr. Brechner discussed in their opinions, such as those concerning Plaintiff's ability to stay on task, her break requirements, and her projected absences. Therefore, the ALJ did not draw the required logical bridge from the evidence in the record to her conclusion that Dr. Ho and Dr. Brechner's opinions did not deserve controlling weight.

The ALJ also did not address the required factors in declining to give the treating physicians' opinions controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); 20 C.F.R. § 404.1527(a)(2)(c)(2)(ii)(5); 20 C.F.R. § 404.1527(c)(2)(ii)(5). The ALJ was required to provide this explanation. *Punzio*, 630 F.3d at 710. This error, alone, warrants remand. The ALJ also failed to address the other factors that must be considered when weighing the opinion evidence of Dr. Ho and Dr. Brechner, including speciality; the length, nature, and extent of their relationship with Plaintiff; or the frequency of their examinations of her. *See* 20 C.F.R. §§ 404.1527(a)(2)(c)(2)(ii)(5) and 404.1527(c)(2)(ii)(5). This failure is particularly concerning because both Dr. Ho and Dr. Brechner treated Plaintiff for several months, and Dr. Brechner was Plaintiff's primary care physician. Rather than give great weight or controlling weight to physicians who had examined Plaintiff multiple times

over the course of several months, the ALJ gave greater weight to the opinions of non-examining state physicians Dr. Ruiz and Dr. Corcoran. This is especially troubling because Dr. Ruiz and Dr. Corcoran made their opinions before the opinions of Dr. Ho and Dr. Brechner were in the record for their review.

On remand, the ALJ is directed to reconsider the weight afforded to the opinion of Plaintiff's treating physicians, Dr. Ho and Dr. Brechner, specifically the weight given to their conclusions concerning her physical limitations.

B.  Functional Capacity Finding

Plaintiff also asserts that the ALJ's RFC finding was not supported by substantial evidence in that the ALJ did not assess all of Plaintiff's impairments in the aggregate. Plaintiff asserts that the ALJ should have considered Plaintiff's obesity, gallbladder disorder, and non-severe impairments affected her RFC. The Commissioner argues that the ALJ's RFC finding was appropriately made after addressing all limitations supported by the record.

"Although . . . impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing  20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

11

In particular, Plaintiff argues that the ALJ failed to consider the effects of her obesity in combination with her other physical limitations. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted), and the Court notes that in this case the ALJ concluded that Plaintiff's obesity *was* a severe impairment, making the determination even more important. *See also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Furthermore, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). In this case, the ALJ included a single statement that "the claimant's obesity was considered in relation so the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling." AR 22. The ALJ also stated that "none of the claimant's health care providers have directly related the claimant's obesity to her other impairments, but she was advised to lose weight to help her bilateral knee impairments." However, the ALJ did not create a logical bridge from these bare statements to demonstrate that she considered Plaintiff's obesity in combination with other impairments and what specific conclusions she came to regarding the limitations they cause.

12

Plaintiff also argues that the ALJ did not adequately address Plaintiff's limitations associated with her gallbladder disorder. Although the ALJ determined that Plaintiff's gallbladder disorder was a severe impairment, she stated that "imaging of the claimant's abdomen in May 2014 showed no evidence of an acute abdominal normality." The Court is unable to reconcile this logical inconsistency on review. The ALJ appeared to determine that Plaintiff's gallbladder issues were severe and nonexistent at the same time. Furthermore, the ALJ did not address how Plaintiff's gallbladder disorder, as a severe impairment, affected her ability to work. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling.").

Plaintiff also asserts that the ALJ erred by not considering the effect of her non-severe impairments on her RFC. The record reveals that Plaintiff suffered a hiatal hernia and struggled with mental health issues. The ALJ determined that these impairments were non-severe because the hiatal hernia had not lasted and was not expected to last longer than twelve months, and because Plaintiff's mental health impairments caused no more than mild restrictions on various aspects of her life. AR 19-20. However, the ALJ did not discuss how these impairments, though non-severe, affected Plaintiff's ability to work in combination with her other impairments, a required inquiry. *See Terry*, 580 F.3d at 477; *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded.").

On remand, the ALJ is directed to consider all of Plaintiff's impairments, alone and in

combination, and to specifically address the effect her obesity, gallbladder disorder, hiatal hernia, and mental health issues have on her other impairments and her ability to perform work.

    C.    <u>Plaintiff's Testimony</u>

Plaintiff also argues that the ALJ's assessment of Plaintiff's statements concerning her subjective symptoms and limitations was legally insufficient and unsupported by substantial evidence. Plaintiff argues that the ALJ improperly relied on evidence that Plaintiff could perform daily activities in giving little weight to Plaintiff's testimony. The Commissioner argues that the ALJ appropriately weighed Plaintiff's subjective statements concerning her limitations by properly noting inconsistencies between Plaintiff's testimony and objective evidence in the record.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work, but "must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir.2009))

In this case, the ALJ discounted Plaintiff's statements of pain. She explained that she found Plaintiff's testimony at the hearing inconsistent with other evidence in the record because Plaintiff "told Dr. Miller that she cooked, did her own grocery shopping, and did her own laundry. . . . She also reported that she prepared meals, did light housekeeping, drove a car, could go out alone, shopped in stores, managed her own finances and paid her own bills, watched television, read, and even went out for dinner and movies with friends." AR 23-4. However, the Seventh Circuit Court of Appeals has repeatedly criticized discounting a claimant's reported symptoms on the basis of an ability to take care of basic household chores. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living as indicating an ability to perform full-time work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living

15

does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

The ALJ also stated that Plaintiff "sustained multiple rib fractures after she 'climbed up her pool ladder' and the ladder collapsed," concluding that this activity was "not consistent with the claimant's allegations of disability beginning in October 2009." However, the ALJ improperly relied on this incident in discounting Plaintiff's testimony. *See, e.g., Scrogham*, 765 F.3d at 700 ("Further, at least one of the activities was a precipitating event that led to one of Mr. Scrogham's doctor visits. Surely, this type of ill-advised activity cannot support a conclusion that Mr. Scrogham was capable of performing fulltime work."); *Hollister v. Colvin*, No. 2:12-CV-52-PRC, 2013 WL 718479, at *7 (N.D. Ind. Feb. 26, 2013) ("The ALJ does not explain how Plaintiff's failed attempt to climb a ladder indicates his ability to balance rather than support his allegation that he is incapable of activities, such as climbing ladders, that require good balance.").

In addition, the ALJ stated that Plaintiff's testimony concerning her use of a cane at all times was refuted because "the medical evidence does not document significant deficits in motor or sensory functioning, nor does the evidence show that claimant regularly used an assistive device for ambulation." AR 23. Setting aside the fact that the record included evidence that Plaintiff had weakness in her lower extremities, multiple knee surgeries, and spinal issues, all of which might affect her ability to walk, the ALJ improperly discounted Plaintiff's testimony concerning her cane

16

use, as cane use does not require medical documentation. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription.").

Accordingly, the Court will remand for the ALJ to properly assess Plaintiff's testimony concerning her own limitations consistent with the discussion above.

D. Remedy

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. On remand, the ALJ will likely need to solicit additional evidence to make the required determinations consistent with this opinion. Furthermore, Plaintiff did not provide any argument on why an instant award of benefits would be appropriate. Accordingly, the Court is remanding this matter for further proceedings.

**V. Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the request contained in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], **REVERSES** the Administrative Law Judge's decision, and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

So ORDERED this 16th day of September, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record